IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/23/10
```

PATRICK deMUNECAS; KEVIN McINTYRE;
CARMEN COSTANZO; JOHAN BOTMA; and
LANE SPIGNER, on behalf of themselves and all
others similarly situated,

     Plaintiffs,

-against-

*BOLD FOOD, LLC;* KBFK RESTAURANT CORP.;
LAURENCE KRETCHMER; and BOBBY FLAY,

     Defendants.

09 Civ. 00440 (DAB)

DAB
8/23/10
[PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTIONS FOR CERTIFICATION OF THE SETTLEMENT CLASS,
FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF THE
FLSA SETTLEMENT, APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT
OF EXPENSES, CLASS REPRESENTATIVE SERVICE AWARDS, AND
RETALIATION PAYMENT

  The Plaintiffs are former and current servers, runners, bussers, and bartenders who work

or worked at three New York City restaurants – Bar Americain, Mesa Grill, and Bolo. The

restaurants are owned or operated by Defendants Bold Food, LLC, KBFK Restaurant Corp.,

Laurence Kretchmer, and Bobby Flay. On January 15, 2009, Plaintiffs Patrick deMunecas,

Kevin McIntyre, and Carmen Costanzo commenced this action as a putative class action under

Federal Rule of Civil Procedure 23 and as a collective action under 29 U.S.C. § 216(b), bringing

claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

(Declaration of Rachel Bien in Support of Plaintiffs' Motion for Certification of the Settlement

Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement

("Bien Decl.") ¶ 4.) On January 22, 2009, Plaintiffs amended their Complaint, adding Johan

Botma and Lane Spigner as Plaintiffs and KBFK Restaurant Corp. and Laurence Kretchmer as

Defendants. (*Id.* ¶ 5.) On July 20, 2009, Plaintiffs filed a Second Amended Complaint, adding Bobby Flay as a Defendant. (*Id.* ¶ 6.) Sixty-five others have joined this case as Opt-in Plaintiffs under the FLSA. (Bien Decl. ¶ 7.)

The parties reached this $800,000 settlement under the supervision of an experienced employment law mediator, Ruth D. Raisfeld of Alternative Dispute Resolution Services. (*Id.* ¶ 14.) Thereafter, the parties executed a formal written settlement agreement ("Settlement Agreement"). (Bien Decl. Ex. B.)

On March 3, 2010, the Court entered an Order preliminarily approving the settlement; conditionally certifying the settlement class; appointing Outten & Golden LLP as Class Counsel; and authorizing the dissemination of Plaintiffs' Proposed Notice of Settlement and Class Action Settlement Procedure ("Notice"). (Docket No. 49.) The Court entered an Order on April 19, 2010, adjourning the dates for dissemination of the Notice and the final fairness hearing. (Docket No. 51.)

On May 28, 2010, Settlement Services, Inc., a claims administrator, sent the Notice to all class members informing them of their right to opt out of or object to the settlement and of Class Counsel's intention to seek up to 33% of the settlement fund for attorneys' fees and their out-of-pocket expenses.

On August 6, 2010, Plaintiffs filed their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval"). That same day, Plaintiffs also filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Class Representative Service Awards and a Retaliation Payment ("Motion for Service Awards"). Defendants took no position with respect to any of these motions and did not object to the requests for attorneys' fees, costs, or service payments.

2

The Court held a fairness hearing on August 23, 2010. No Class Member objected to the settlement, and one Class Member requested exclusion.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees and Reimbursement of Expenses, the Motion for Service Awards and Retaliation Payment, the supporting declarations, the oral argument presented at the August 23, 2010 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the August 23, 2010 fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

<u>**CERTIFICATION OF THE SETTLEMENT CLASS**</u>

1. The Court certifies the following class under Federal Rule of Civil Procedure 23(e), for settlement purposes:

> All servers, runners, bussers, and bartenders who work or have worked at Bar Americain, Mesa Grill, and/or Bolo in New York City for 30 days or more between January 15, 2003 and September 23, 2009.

2. Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).

3. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1) because there are approximately 341 Class Members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.")

4. The proposed class also satisfies Federal Rule of Civil Procedure 23(a)(2), the commonality requirement. All class members raise common issues: (1) whether Defendants misappropriated mandatory gratuities and/or "service charges" that Defendants charged their event customers; (2) whether Defendants misappropriated voluntary customer tips by distributing some to tip ineligible workers; and (3) whether Defendants failed to pay overtime, spread-of-

3

hours, and call-in pay and reimburse uniform expenses. *See McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713 (PGG), 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010); *Prasker v. Asia Five Eight LLC*, 08 Civ. 5811 (MGC), 2010 WL 476009, at *2 (S.D.N.Y. Jan. 6, 2010); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494 (DF), 2009 WL 5841177, at *2 (S.D.N.Y. May 28, 2009); *Mohney v. Shelly's Prime Steak*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at *3 (S.D.N.Y. Mar. 31, 2009).

5.   Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008). The named plaintiffs suffered the same alleged injury as did the class members – Defendants' failure to pay proper overtime, tips, and mandatory gratuities paid by event customers. *See McMahon*, 2010 WL 2399328, at *2, *Prasker*, 2010 WL 476009, at *2; *Reyes*, 2009 WL 5841177, at *2; *Mohney*, 2009 WL 5851465, at *4.

6.   Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4), adequacy, because Plaintiffs' interests are not antagonistic or at odds with those of the class members, *see Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007), and because Plaintiffs' counsel "has an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area," *Prasker*, 2010 WL 476009, at *2 (quoting *Reyes*, 2009 WL 5841177, at *2).

7.   Plaintiffs also satisfy Federal Rule of Civil Procedure 23(b)(3). Common factual allegations – that Defendants failed to pay Plaintiffs and the Class overtime and misappropriated tips and mandatory gratuities – and a common legal theory – that Defendants' policies violated the NYLL – predominate over any factual or legal variations among Class Members. *See*

4

*McMahon*, 2010 WL 2399328, at *2 (finding that common factual allegations that defendants failed to pay overtime wages and misappropriated mandatory gratuities and common legal theory that defendants' policies violated the NYLL satisfied the predominance requirement), *Prasker*, 2010 WL 476009, at *2 (same); *Reyes*, 2009 WL 5841177, at *3 (same); *Mohney*, 2009 WL 5851465, at *3 (same); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (the issue of whether employees were supposed to be paid overtime was "about the most perfect question for class treatment"); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and this issue "predominates over any individual calculations of overtime wages").

8. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010); *McMahon*, 2010 WL 2399328, at *3; *Prasker*, 2010 WL 476009, at *3; *Reyes*, 2009 WL 5841177, at *3; *Mohney*, 2009 WL 5851465, at *4; *Damassia*, 250 F.R.D. at 161, 164. Plaintiffs and the class members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by class members arising from the same allegations. Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Employing the class device here will not only achieve economies of scale for putative class members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims. *See Clark*, 2010 WL 1948198, at *8; *McMahon*,

5

2010 WL 2399328, at *3; *Prasker*, 2010 WL 476009, at *3; *Reyes*, 2009 WL 5841177, at *3; *Mohney*, 2009 WL 5851465, at *4.

**APPROVAL OF THE SETTLEMENT AGREEMENT**

9. The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement and this Order under Federal Rule of Civil Procedure 23.

10. Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

11. Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.") "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement"); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

12. "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *In re*

6

*BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (internal quotation marks and citation omitted). The Court gives weight to the parties' judgment that the settlement is fair and reasonable. *See Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010); *Prasker*, 2010 WL 476009, at *4; *Reyes*, 2009 WL 5841177, at *4; *Mohney*, 2009 WL 5851465, at *4.

### *Procedural Fairness*

13. The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Frank*, 228 F.R.D. at 184 (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)). The settlement was reached after Plaintiffs had conducted a thorough investigation and evaluated the claims, and after arm's-length negotiations between the parties.

14. Plaintiffs' counsel reviewed Defendants' payroll registers and tip sheets, event contracts, New York Department of Labor investigation files, and other relevant documents. (Bien Decl. ¶¶ 8-13.) Plaintiffs' counsel also interviewed current and former employees of Defendants to obtain factual information as part of their investigation of the claims. (*Id.* ¶ 13.)

15. To help resolve the case, the parties enlisted the services of experienced employment mediator, Ruth D. Raisfeld. Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; 2010 WL 2025106, at *5; *Prasker*, 2010 WL 476009, at *4.

### *Substantive Fairness*

16. The settlement is substantively fair. All of the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

7

17.  The "*Grinnell* factors" are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

18.  Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

19.  The class's reaction to the settlement was positive. The Notice included an explanation of the allocation formula and estimated each class member's award. The Notice also informed class members that they could object to or exclude themselves from the settlement, and explained how to do so. No class member objected to the Settlement, and only one class member requested exclusion. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted-out). This favorable response recommends final approval. *See Khait,* 2010 WL 2025106, at *5 (granting final approval where no class members objected and only two class members opted out); *Prasker*, 2010 WL 476009, at *4 (granting final approval where no class members objected and only two class members opted out); *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 WL 5841128 (S.D.N.Y. July 27, 2009) (finding settlement to be fair, reasonable, and adequate where no class members objected and only one class member opted out). The second *Grinnell* factor weighs in favor of final approval.

8

20.     The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537. Here, through an efficient, informal exchange of information, Plaintiffs obtained sufficient discovery. (Bien Decl. ¶¶ 8-13.) The parties' 19-hour mediation session allowed them to further explore the claims and defenses. (*Id.* ¶ 15.) The third *Grinnell* factor weighs in favor of final approval.

21.     The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). Here, the fact-intensive nature of Plaintiffs' misappropriated tip and service charge claims presents risk. The settlement eliminates this uncertainty. *See McMahon*, 2010 WL 2399328, at *5; *Prasker*, 2010 WL 476009, at *5. The fourth *Grinnell* factor weighs in favor of final approval.

22.     The risk of maintaining class status throughout trial also weighs in favor of final approval. A contested class certification motion would likely require extensive discovery and briefing. If the Court granted a contested class certification motion, Defendants could seek to file a Federal Rule of Civil Procedure 23(f) appeal and/or move to decertify, which would require additional rounds of briefing. Settlement eliminates the risk, expense, and delay inherent in this process. The fifth *Grinnell* factor weighs in favor of final approval.

23.     It is not certain that Defendants could withstand a greater judgment. Even if they could, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9). Here, the Settlement Agreement eliminated the risk of collection by requiring Defendants to pay the Fund into escrow on a date certain. (Bien Decl.

Ex. B (Settlement Agreement) ¶ 3.1(B).) This factor also favors final approval. *Prasker*, 2010 WL 476009, at *5 (settlement agreement eliminated risk of collection by requiring payment of settlement fund into escrow).

24. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The seventh *Grinnell* factor favors final approval.

**APPROVAL OF THE FLSA SETTLEMENT**

25. The Court hereby approves the FLSA settlement.

26. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *Khait*, 2010 WL 2025106, at *6 (citing *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984)).

27. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1353-54). "If the proposed settlement reflects a reasonable compromise over contested issues," the settlement should be approved. *Id.*

28. The FLSA settlement meets the standard for approval. The settlement was the

10

result of contested litigation and arm's length negotiation. (Bien Decl. ¶¶ 8-19.) Recognizing the uncertain legal and factual issues involved, the parties engaged in a 19-hour mediation session with an experienced mediator. (*Id.* at ¶ 15)

## DISSEMINATION OF NOTICE

29.   Pursuant to the Preliminary Approval Order, the Notice was sent by first-class mail to each class member at his or her last known address (with re-mailing of returned Notices). This Court finds that the Notice fairly and adequately advised class members of the terms of the settlement, as well as the right of members of the class to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted on August 23, 2010.   Class Members were provided the best notice practicable under the circumstances.

30.   The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

31.   The Court confirms Settlement Services, Inc. ("SSI") as the Claims Administrator.

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND AWARD OF SERVICE PAYMENTS TO NAMED PLAINTIFFS

32.   On March 3, 2010, the Court appointed Outten & Golden LLP as Class Counsel because they met all of the requirements of Federal Rule of Civil Procedure 23(g).

33.   Class Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims.

34.   Class Counsel, Outten & Golden LLP, are experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions. *See Clark*, 2010 WL 1948198, at *8; *McMahon*, 2010 WL 2399328, at *6-7; *Prasker*, 2010 WL 476009, at *6; *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 U.S. Dist. LEXIS

11

77489, at *6 (S.D.N.Y. July 24, 2009) (noting that O&G "has substantial experience prosecuting and settling employment class actions, including wage and hour class actions and are well-versed in wage and hour law and in class action law"); *Reyes*, 2009 WL 5841177, at *3; *Westerfield v. Washington Mut. Bank*, No. 06 Civ. 2817, No. 08 Civ. 287, 2009 U.S. Dist. LEXIS 94544, at *12-13 (E.D.N.Y. Oct. 2, 2009). The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel have committed substantial resources to prosecuting this case.

35. The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $264,000.00 in attorneys' fees, which is thirty-three percent (33%) of the Fund.

36. In this Circuit, the "percentage-of-recovery" method is the "trend." *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores*, 396 F.3d at 122; *McMahon*, 2010 WL 2399328, at * 7; *Reyes*, 2009 WL 5841177, at *4; *Mohney*, 2009 WL 5851465, at *5; *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage of the fund method); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).

37. Although the Court has discretion to award attorneys fees based on the lodestar method or the percentage-of-recovery method, *McDaniel*, 595 F.3d at 417, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *see Frank*, 228 F.R.D. at 189. Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840 (PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). The FLSA and the NYLL are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *See McMahon*, 2010 WL 2399328, at *7; *Khait*, 2010 WL 2025106, at *8; *Prasker*, 2010 WL

12

476009, at *6; *Sand*, 2010 WL 69359, at *3.

38.     In class action wage and hour lawsuits, public policy favors a common fund attorneys' fee award. *See Frank*, 228 F.R.D. at 189. Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980), attorneys who fill the private attorney general role must be adequately compensated for their efforts. *McMahon*, 2010 WL 2399328, at *7; *Khait*, 2010 WL 2025106, at *6; *Prasker*, 2010 WL 476009, at *6. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *McMahon*, 2010 WL 2399328, at *7; *Khait*, 2010 WL 2025106, at *6 (citing *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000)); *Prasker*, 2010 WL 476009, at *6.

39.     Common fund recoveries are contingent on a successful litigation outcome. Such "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk." *In re Abrams*, 605 F.3d 238, 245-46 (4th Cir. 2010). Many individual litigants, including the class members here, "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990).

40.     "Plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever." *In re Abrams*, 605 F.3d 246. Here, Class Counsel risked time and effort and advanced costs and expenses, with no

ultimate guarantee of compensation, and is therefore entitled to an attorneys' fee award that exceeds their lodestar amount in this case.

41.     Class Counsel's request for 33% of the Fund is reasonable under the circumstances of this case and is "consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008). *See Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 2, 2010) (awarding class counsel 33% of $745,000 fund in FLSA and NYLL restaurant case); *Clark*, 2010 WL 1948198, at *8-9 (awarding class counsel 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *McMahon*, *2010* WL 2399328, at *7 (awarding class counsel 33% of $400,000 settlement fund in FLSA and NYLL tip misappropriation restaurant case); *Khait*, 2010 WL 2025106, at *8 (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case); *Prasker*, 2010 WL 476009, at *6 (awarding class counsel fees of $346,500 out of $1,050,000 settlement fund in FLSA and NYLL tip misappropriation restaurant case); *Westerfield*, 2009 WL 5841129, at *4-5 (awarding 30% of $38,000,000 fund in nationwide overtime suit); *Duchene v. Michael Cetta, Inc.*, No. *06 Civ. 4576(PAC), 2009 WL* 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (awarding class counsel 32.2% of $3,150,000 fund in FLSA and NYLL tip misappropriation case); *Reyes*, 2009 WL 5841177, at *3-4 (awarding 33% of $710,000 fund in FLSA and NYLL tip misappropriation case); *Mohney*, 2009 WL 5851465, at *4-5 (awarding 33% of $3,265,000 fund in FLSA and NYLL tip misappropriation case); *Stefaniak v. HSBC Bank USA, N.A.*, No. *05 Civ. 720, 2008 WL 763010*2, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund in FLSA and NYLL case); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33 1/3% fee of fund valued at $11.5 million); *Cohen v. Apache Corp.*, No. 89 Civ. 0076(PNL), 1993 WL 126560, at *1

(S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of the $6.75 million fund).

42. Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany* does not address a common fund fee petition, it supports Class Counsel's request for approximately 33% of the fund because "reasonable, paying client[s]," 493 F.3d 110, 111-12 (2d Cir. 2007), typically pay one-third of their recoveries under private retainer agreements. *Clark*, 2010 WL 1948198, at *9.

43. All of the factors in *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) weigh in favor of the requested fee award.

44. Applying the lodestar method as a "cross check," *see Goldberger*, 209 F.3d at 50, the Court finds that the multiplier that Class Counsel seek is reasonable. Courts regularly award lodestar multipliers from 2 to 6 times lodestar. *See, e.g., In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley*, 186 F. Supp. 2d at 371 (the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. at 473 (awarding multiplier of 3.97 times lodestar); *Rabin v. Concord Assets Group, Inc.*, No. 89 Civ. 6130 (LBS), 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905 (MBM), 1992 WL 210138, at *6-8 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6).

45. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request. *See Parker*, 2010 WL 532960, at *2 ("as class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will

diminish over time").

46. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $12,118.00. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003). Here, Class Counsel's un-reimbursed expenses – mediation fees, telephone charges, postage, transportation and working meal costs, photocopies, and electronic research – are reasonable and were incidental and necessary to the representation of the Class.

47. The attorneys' fees awarded and the amount in reimbursement of litigation costs and expenses shall be paid from the Settlement Fund.

48. The Court finds reasonable service awards of $5,000 each for Class Representatives Patrick deMunecas, Kevin McIntyre, Carmen Costanzo, Johan Botma, and Lane Spigner. These amounts shall be paid from the Settlement Fund.

49. Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff. *See Parker*, 2010 WL 532960, at *1 ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Clark*, 2010 WL 1948198, at *9; *McMahon*, 2010 WL 2399328, at *8-9, *Khait*, 2010 WL 2025106, at *9; *Mohney*, 2009 WL 5851464, at *6; *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other

burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.") *See also* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) (discussing the importance of aggregating claims to protecting civil rights and wage and hour rights).

50. The Court also finds that a payment of $15,000 from the Fund to settle Plaintiff deMunecas' retaliation claims is reasonable.

## CONCLUSION

51. The "Effective Date" of the settlement shall be 30 days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved.

52. Within 15 days of the Effective Date, Defendants shall distribute the funds in the settlement account by making the following payments in the order below:

    a. Paying Class Counsel thirty-three percent of the Fund ($264,000);

    b. Reimbursing Class Counsel for $12,118.00 in litigation costs and expenses;

    c. Paying service awards of $5,000 each to Named Plaintiffs Patrick deMunecas, Kevin McIntyre, Carmen Costanzo, Johan Botma, and Lane Spigner;

    d. Paying Patrick deMunecas $15,000 in settlement of his individual retaliation claims;

    e. Paying the remainder of the funds currently in the settlement account to class members in accordance with the allocation plan described in the Settlement Agreement.

53. Defendants shall provide Class Counsel with proof of mailing each check to each class member, as described in the Settlement Agreement.

54. The Court retains jurisdiction over this action for the purpose of enforcing the

Settlement Agreement and overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this 23RD day of August, 2010.

*Deborah A. Batts*

Honorable Deborah A. Batts
United States District Judge